UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                  )
A&W MAINTENANCE, INC.,            )
                   Plaintiff,     )
          v.                       )
                                  )       CIVIL ACTION
FIRST MERCURY INSURANCE COMPANY,  )       No. 1:14-cv-10169-WGY
                   Defendant,      )
                                  )
THE CHARTER OAK FIRE INSURANCE    )
COMPANY                            )
          Intervenor-Defendant,   )
                                  )
EXCELSIOR INSURANCE COMPANY,      )
          Intervenor-Defendant.   )
_____)

YOUNG, D.J.                                    March 17, 2015

   FINDINGS OF FACT, RULINGS OF LAW, AND DECLARATORY JUDGMENT


I.   **INTRODUCTION**

     This action arises out of an accident (the "Underlying

Accident") that occurred on February 23, 2011, when an employee

of A&W Maintenance, Inc. ("A&W") sustained injuries after

falling into an open clarifier tank while performing services at

a water treatment facility pursuant to a contract with Hart

Engineering Corp. ("Hart").  The plaintiff, A&W, had two

relevant insurance policies at that time.[1]  The first is a

_____
     [1] The insurance line-up in this case is as follows: (1)
First Mercury as Commercial General Liability Insurer for A&W;
(2) Excelsior Insurance Company (part of the Liberty Mutual

1

commercial general liability insurance policy (the "CGL Policy")
with the defendant, First Mercury Insurance Co. ("First
Mercury"). The second is a commercial auto insurance policy
(the "Excelsior Auto Policy") with Excelsior Insurance Company
("Excelsior"). The Charter Oak Fire Insurance Co. ("Charter
Oak") provides general liability insurance to Hart.

A&W made claims with both First Mercury and Excelsior
requesting defense and indemnification of third-party claims.
Both insurers denied coverage under their respective policies.
A&W filed this action against First Mercury challenging its
denial of coverage. A&W has also challenged Excelsior's denial
of coverage in a related lawsuit filed before this Court.[2]

First Mercury filed a motion for summary judgment against
A&W on grounds that the claims set forth in the underlying tort
action for which A&W seeks defense and indemnity fall squarely
within Clause 2(g) of the CGL Policy, which excludes coverage
for bodily injury arising out of the use of an automobile. A&W

---

Group of insurance companies which uses letterhead in the name
of "Peerless Insurance, A Liberty Mutual Company") as Commercial
Auto Insurer for A&W; (3) The Charter Oak Fire Insurance Company
(an insurer in the Travelers Insurance Group that uses
letterhead in the name of Travelers) as General Liability
Insurer for Hart; and (4) AIG as Commercial Umbrella Liability
Policy for A&W. See A&W Am. Compl. ¶ 11 n.1.

[2] A&W Maint., Inc. v. Excelsior Ins. Co., No. 14-cv-02370
(D. Mass. June 26, 2014).

filed a cross-motion opposing First Mercury's motion and seeking partial summary judgment in its favor.

Charter Oak and Excelsior have both intervened as defendants in the present proceeding.  All four parties agreed to proceed on a case-stated basis to resolve questions of liability.  For reasons stated in greater detail in this opinion, this Court holds that First Mercury has a duty to defend and indemnify both A&W and Hart for third-party claims arising out of the Underlying Accident.

## II.  PROCEDURAL HISTORY

A&W filed an initial action against First Mercury on January 23, 2014, for its failure to provide insurance coverage under the CGL Policy with regard to a third-party complaint filed against A&W; it then amended its complaint on July 24, 2014.  Compl., ECF No. 1; First Am. Compl. ("A&W Am. Compl.") ¶¶5-9, ECF No. 24.  A&W raised claims for (i) declaratory judgment, (ii) breach of contract, and (iii) violations of Massachusetts General Laws Chapter 93A.  A&W Am. Compl. 1.

In its answer to the amended complaint, filed on July 30, 2014, First Mercury raised affirmative defenses against each of the counts and sought declaratory judgment stating that it has no obligation to defend or indemnify either A&W or Hart with respect to the third-party complaint.  Answer Def. First Mercury Ins. Co. Pl.'s First Am. Compl. ("First Mercury Answer"), ECF

No. 25.  A&W filed an answer to First Mercury's counter-claim on
August 4, 2014 denying that First Mercury is entitled to
declaratory judgment.  Pl. A&W Maint., Inc.'s Answer & Defenses
Countercl. First Mercury Ins. Co., ECF No. 32.

On July 30, 2014, First Mercury moved for summary judgment
against A&W on all the counts present in A&W's original
complaint.  Def. First Mercury Ins. Co. Mot. Summ. J., ECF No.
26.  First Mercury also offered arguments supporting its
counterclaim for a declaratory judgment that it has no
obligation to defend or indemnify either A&W or Hart with
respect to the allegations of the third-party complaint and the
A&W complaint.  Id.; Def. First Mercury Ins. Co.'s Mem. Law
Supp. Mot. Summ. J. ("First Mercury Mem."), ECF No. 27.  A&W
then filed a cross-motion on August 29, 2014, for partial
summary judgment as to its declaratory judgment and breach of
contract claims.  Pl.'s Cross-Mot. Partial Summ. J., ECF No. 43;
Pl.'s Mem. Law Supp. Opp'n Def. Mot. Summ. J. & Pl.'s Cross-Mot.
Partial Summ.J. ("A&W Mem."), ECF No. 41.  First Mercury filed a
memorandum in opposition to A&W's cross-motion on September 19,
2014.  Def. First Mercury Ins. Co.'s Opp'n Pl.'s Cross-mot.
Partial Summ. J. ("First Mercury Opp'n"), ECF No. 51.

On August 27, 2014, Charter Oak filed a motion to intervene
as a defendant, Charter Oak Fire Ins. Co.'s Mot. Intervene &
Stay Adjudication Mot. Summ. J., ECF No. 39, which was granted.

4

Elec. Notice, Sept. 4, 2014, ECF No. 44. Charter Oak then filed

a memorandum in opposition to First Mercury's motion for summary

judgment. Intervenor Charter Oak Fire Ins. Co.'s Mem. Law Opp'n

Def.'s Mot. Summ. J. ("Charter Oak Mem."), ECF No. 53. Charter

Oak argues that this Court should deny First Mercury's motion

for summary judgment insofar as it relates to Hart's claims for

coverage. Id. at 12.

This case was referred to an alternative dispute resolution

hearing set for October 1, 2014 before Chief Magistrate Judge

Jennifer C. Boal. Elec. Notice, Aug. 18, 2014, ECF No. 38.

First Mercury filed a motion to postpone the ADR hearing on

grounds that the case was not ripe for mediation until this

Court had ruled on the parties' motions for summary judgment.

Assented-to Mot. Def. First Mercury Ins. Co. Postpone ADR Hr'g,

ECF No. 49. Chief Magistrate Judge Boal granted this motion.

Elec. Order, Sept. 15, 2014, ECF No. 50.

On October 14, 2014, Excelsior filed its motion to

intervene, Excelsior Ins. Co.'s Mot. Intervene, ECF No. 58,

which this Court granted. Elec. Notice, Oct. 17, 2014, ECF No.

71. Excelsior also filed a memorandum in opposition to First

Mercury's motion for summary judgment on October 14, 2014. Def.

Excelsior Ins. Co.'s Mem. Law Opp'n First Mercury's Mot. Summ.

J. (& w/r/t Case Stated) ("Excelsior Mem."), ECF No. 60.

All parties agreed to proceed on a case-stated basis. Where the parties stipulate to the material facts, such stipulation enables the court to render decision without trial. Rossi v. Boston Gas Co., 833 F. Supp. 62, 64 n.4 (D. Mass. 1993). This "case stated" procedural device is especially appropriate where the district court is faced with cross motions for summary judgment. Id. Unlike a motion for summary judgment, in a "case stated" the parties authorize the court to decide any significant issues of material fact or disputed factual questions that remain. Id. In contrast to summary judgment, where the Court must draw all reasonable inferences in favor of the nonmovant, in a "case stated" the Court approaches the issues as a neutral adjudicator and is entitled to "engage in a certain amount of factfinding, including the drawing of inferences." TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir. 2007) (quoting United Paperworkers Int'l Union Local 14 v. Int'l Paper Co., 64 F.3d 28, 31 (1st Cir. 1995)) (internal quotation marks omitted).

The case stated hearing was held on October 17, 2014. The parties submitted further written briefs, and the Court entertained full oral argument just as it would do at the close of a trial. Elec. Notice, ECF No. 71. After careful reflection, this opinion resolves the following issues:

i. Did the Underlying Accident arise out of the ownership, maintenance or use of an automobile? Accordingly, does First Mercury or Excelsior have a duty to defend and indemnify A&W for the third-party claims arising out of the Underlying Accident?

ii. Depending on which policy is found to provide coverage, is Hart precluded from coverage?

iii. Does Charter Oak have a duty to defend and indemnify Hart, considering the presence of the CGL Policy and the Excelsior Auto Policy?[3]

iv. Has First Mercury violated Massachusetts General Laws Chapter 93A?

## III. FINDINGS OF FACT

A&W is a contracting business based in Middleboro, Massachusetts. A&W Am. Compl. ¶ 1. A&W repairs failing infrastructure, such as tanks, tunnels, aqueducts, pipes, and manholes, primarily through the spray application of structural epoxy coatings. _Id._ First Mercury is an insurance company with its principal place of business in Michigan. _Id._ ¶ 2. A&W holds a commercial general liability policy from First Mercury. _Id._; Aff. Christopher J. Crawford ("Crawford Aff."), Ex. 1,

---

[3] Def. Excelsior Ins. Co.'s Mem. Law Opp'n First Mercury's Mot. Summ. J. & Case Stated ("Excelsior Case-Stated Br."), Ex. 1, Commercial Auto Coverage Part Policy No. BA 8783971 ("Excelsior Auto Policy"), ECF No. 60-1.

Commercial General Liability Declarations (Occurrence Policy) Policy No. FMMA002902-2 ("CGL Policy"), ECF No. 29-1. At all relevant times A&W had paid its premiums, and its policy with First Mercury was in force. A&W Am. Compl. ¶ 4.

In the fall of 2010, A&W entered into a written subcontract with Hart to prepare and coat wastewater treatment tanks at the Bristol, Rhode Island Wastewater Treatment Plant. Id. ¶ 5; see also A&W Mem., Ex. 9, Subcontract ("Hart Subcontract"), ECF No. 41-9. On February 23, 2011, A&W's crew arrived at the jobsite in the morning to perform their work. A&W Am. Compl. ¶ 6. In order to reach the work area, A&W employees had to back their truck down a driveway which was bordered by a nearby building. Id.

Micheal Jodrie ("Jodrie"), an employee of A&W, got out of the truck and positioned himself at the rear right side of the truck to serve as a spotter/lookout for the driver, Dan Fortin ("Fortin"). A&W Mem. 3. While acting as a spotter, Jodrie stepped backwards and fell into a clarifier tank, which had been left open by Hart (the "Underlying Accident"). Id.; A&W Am. Compl. ¶ 7. It is undisputed that the truck belonged to A&W and that it contained all the spray equipment and the safety equipment. Aff. Alexandra L. Geiger, Ex. A, Dep. Francis Smith, 105:16-106:7, ECF No. 28-1.

No party to this case assigns any fault to the truck driver in causing the accident. Fortin stated that before he started backing up the vehicle, he noticed the hatch doors of the clarifier tank were left open, and that he was informed that it was left open for the purpose of ventilation. A&W Mem., Ex. 2, Dep. Daniel Fortin ("Fortin Dep.") 71:10-81:15, ECF No. 41-2. He stated that Jodrie was not present with him at the time he was informed of this, and further, that he had not discussed this with Jodrie. Id. at 83:21-84:20.

Fortin specifically states that he was backing up the trailer to make the equipment more accessible for the job. Id. at 88:22-89:1. While backing the truck up, Fortin looked into his mirror and could no longer see Jodrie. Id. at 94:10-16. When he got out of the truck he saw that Jodrie had fallen backwards into the open tank. Id. at 96:9-16.

Fortin said that Jodrie told him that he lost his balance because of the presence of a two-inch rise between the tank and the driveway. Id. at 103:13-20. Fortin had been reversing at a speed of approximately two miles per hour, and the truck did not veer off and hit Jodrie at any point. Id. at 295:9-21. Fortin also confirmed that Jodrie stated that the truck had not hit him in any way, and that the trailer was not in a position where it would hit Jodrie. Id. at 295:22-296:11. He admitted that

Jodrie had moved over towards the tank to allow the truck to get further back without striking him.  Id. at 296:21-297:2.

A&W immediately filed a First Report of Injury, initiating a worker's compensation claim for Jodrie.  A&W Am. Compl. ¶ 10. On July 22, 2011, in response to a notice of a potential third-party claim, First Mercury issued a reservation of rights letter to A&W, reserving its right to deny coverage.  Id.

Charter Oak received notice from Jodrie of his intent to pursue third-party personal injury claims against Hart.  Id. ¶ 11.  On July 20, 2012, Charter Oak sent a letter to First Mercury requesting that First Mercury defend and indemnify Hart in connection with Jodrie's personal injury claims.  Id.

On August 21, 2012, First Mercury issued a "Denial of Coverage" letter to A&W.  Compl., Ex. A, Denial of Coverage, ECF No. 1-1.  The "coverage position" states:

> The First Mercury policy expressly excludes claims "arising out of the . . . use . . . of any 'auto' . . . owned or operated by . . . any insured."  "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  Here, the alleged loss arises out of the use of a one ton truck and trailer owned by A&W.  The truck and trailer was designed for use on public roads which satisfies the definition of "auto" under the policy.  Moreover, the accident happened as Mr. Jodrie was directing the truck into the site for the purposes of set up and unloading.  The definition of "unloading" includes the handling of property "while it is being moved."  As such, the accident occurred during the use and the unloading of the auto and the above cited auto exclusion applies and bars coverage for this loss.

Id. at 3.  The letter further urged A&W to make a claim against its auto insurer.  Id.  First Mercury also issued a letter to Charter Oak rejecting Charter Oak's tender and denying any duty to defend or indemnify Hart.  Compl., Ex. B, Response to Tender Demand, ECF No. 1-2.

On July 19, 2013, Charter Oak sent a letter to Excelsior alerting it of Jodrie's claims and demanding that Excelsior defend and indemnify Hart.  A&W Am. Compl. ¶ 16.  Excelsior responded on September 4, 2013 with a complete denial of coverage noting that the suit had not yet been filed by Jodrie, and that the claimed injury did not result from the ownership, maintenance or use of a covered auto, which is required to invoke coverage under the referenced insuring agreement.  Compl., Ex. C, Excelsior Letter to A&W 6, ECF No. 1-3.

On July 31, 2013, Jodrie filed a third-party personal injury case against Hart in Rhode Island Superior Court; that case is still pending.  Answer Def. First Mercury Ins. Co. Pl.'s Compl.("First Mercury Initial Answer"), Ex. 1, Pl.'s Compl. & Jury Demand, ECF No. 10.  On November 7, 2013, Hart filed a third-party complaint against A&W seeking defense and indemnification based on the terms of its subcontract with A&W.[4]

---

[4] See Hart Subcontract art. 10 (requiring the subcontractor to maintain insurance coverage at its sole expense and requiring that the contractor be named as an additional insured); see also

First Mercury Initial Answer, Ex. 3, Third Party Compl., ECF No.
12.

On or about December 4, 2013, A&W timely notified First
Mercury of Hart's third-party complaint against A&W.  A&W Am.
Compl. ¶ 21.  In another letter dated December 11, 2013, First
Mercury once again denied coverage and refused to defend and
indemnify A&W.  Compl., Ex. D, First Mercury Final Denial
Letter, ECF No. 1-4.  On January 9, 2014, Excelsior received
notice of the filing of the third-party complaint against A&W,
and apparently having a partial change of heart, decided to
defend A&W from Hart's claim in Jodrie's suit, under a
reservation of rights.  Compl., Ex. E, Liberty Mutual Letter,
ECF No. 1-5.

## IV.  ANALYSIS

### A.    Interpretation of Insurance Contracts

In a case such as this one based on diversity jurisdiction,
claims concerning a contract written and delivered in the
Commonwealth of Massachusetts are governed by Massachusetts law.
Central Mut. Ins. Co. v. Boston Tel., Inc., 486 F. Supp. 2d 180,
183 (D. Mass. 2007).  Interpretation of an insurance contract is
a matter of law for a judge, not a matter of fact for the jury.
Cody v. Conn. Gen. Life Ins. Co., 387 Mass. 142, 146 (1982).

---

id. art. 7 (requiring that the subcontractor indemnify the
contractor in certain circumstances).

Insurance contracts are to be construed "according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed." MacArthur v. Mass. Hosp. Serv., Inc., 343 Mass. 670, 672 (1962) (quoting Koshland v. Columbia Inc. Co., 237 Mass. 467, 471 (1921)) (internal quotation marks omitted). "A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." Hyfer v. Metropolitan Life Ins. Co., 318 Mass. 175, 179 (1945) (quoting Stankus v. New York Life Ins. Co., 312 Mass. 366, 369 (1942))(internal quotation marks omitted). If, however, the contract is ambiguous, doubts as to the meaning of the words must be resolved in favor of the insured and against the insurance company that employed those words. August A. Busch & Co. of Mass., Inc. v. Liberty Mut. Ins. Co., 339 Mass. 239, 243 (1959).

### B.   Burden of Proof

Under Massachusetts law, the insured bears the burden of proving coverage under a commercial general liability policy. Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997); Markline Co. v. Travelers Ins. Co., 384 Mass. 139, 140 (1981). If the insured satisfies his burden, then the insurer must prove that an exclusion applies in order to avoid coverage. Great Sw. Fire Ins. Co. v. Hercules Bldg. & Wrecking Co., 35 Mass. App. Ct. 298, 302 (1993).

In Brown Daltas & Associates, Inc. v. General Accident Insurance Company of America, 48 F.3d 30, 37 (1st Cir. 1995), the First Circuit held that where the party seeking to recover for breach of a duty or obligation under a contract relies on an exception which is in a separate and distinct clause of the contract, the burden is upon the party relying upon the exception. Where the exception is in the same general clause, the burden is on the plaintiff seeking to recover. Id.

In the present case, the coverage clause is contained in Section I of First Mercury's CGL Policy:

> Section I - Coverages. Coverage A Bodily Injury and Property Damage Liability.
> 1. Insuring Agreement.
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
> b. This insurance applies to "bodily injury" and "property damage" only if:
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>   (2) The "bodily injury" or "property damage" occurs during the policy period.

CGL Policy 17.[5]

---

[5] Since this document contains multiple documents numbered separately, this Court refers to the ECF page numbers of A&W's insurance policy with First Mercury for clarity.

The exclusions follow immediately thereafter, with the Auto Exclusion being contained in Section 2(g) (the "Auto Exclusion Clause").

> 2. Exclusions.
>    This insurance does not apply to:
> . . .
>    g. Aircraft, Auto or Watercraft.
>       "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

CGL Policy 17, 19.  Considering that the exception is contained within the same section of the contract that provides for coverage, the burden of proof of establishing coverage is upon A&W – the plaintiff seeking to establish coverage.

**C.    The Underlying Accident did not "arise out of the ownership, maintenance or use of an auto."**

The parties to this case make multiple alternate arguments regarding whether the Auto Exclusion Clause is applicable.  None of the parties dispute that the truck involved in the Underlying Accident is an "auto" within the scope of the CGL Policy.

**1.    Interpretation of the term "arise out of the use" of an automobile.**

First Mercury contends that the Underlying Accident falls within the Auto Exclusion Clause.  First Mercury Mem. 3.  The Auto Exclusion Clause bars coverage for the claims alleged in the underlying action if (1) A&W's truck and trailer were "in

15

use" within the meaning of the CGL Policy, and (2) Jodrie's injuries "arose out of" that "use."  Id. at 8.  Conversely, A&W argues that the vehicle was not "in use" within the meaning of the CGL Policy, therefore Jodrie's injuries could not have arisen out of such use; and independently, that Jodrie's actions in acting as a "spotter" do not constitute "use of the truck" under the CGL Policy.  A&W.s Mem. 6.

Massachusetts law defines "use" of an auto broadly as "not confined to motion on a highway but extend[ing] to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured."  Central Mut. Ins. Co., 486 F. Supp. 2d at 185 (alternation in original) (quoting White v. Am. Cas. Ins. Co., 53 Mass. App. Ct. 66, 68(2001)) (internal quotation marks omitted).

Courts in Massachusetts have held that for injury to "arise out of the use" of an automobile so as to be within the auto exclusion clause of a commercial general liability insurance policy, there has to be a reasonably apparent causal connection between the use of the auto and the injury.  Id.  "The expression 'arising out of' indicates a wider range of causation than the concept of proximate causation in tort law. . . . However, the expression does not refer to all circumstances in which the injury would not have occurred 'but for' the involvement of a motor vehicle."  Ruggerio Ambulance Serv., Inc.

16

v. <u>Nat'l Grange Mut. Ins. Co.</u>, 430 Mass. 794, 797 (2000)
(alterations in original) (quoting <u>Rischitelli</u> v. <u>Safety Ins.
Co.</u>, 423 Mass. 703, 704 (1996)) (internal quotation marks
omitted).

"There is no bright line test in Massachusetts indicating
when an injury may be said to arise out of the use of an
automobile."  <u>White</u>, 53 Mass. App. Ct. at 70.  "Whether a
particular injury is sufficiently related to an automobile's use
must be decided on a case-by-case basis and requires 'a judgment
call . . . as to where along a continuum of causation fall the
facts of each case.'"  <u>Id.</u> (alteration in original) (quoting
<u>Ruggerio Ambulance Serv.</u>, 430 Mass. at 797).

The cases that find a casual connection generally rely upon
a determination that a specific use of the auto contributed to
the injury.  See, e.g., <u>Assetta</u> v. <u>Safety Ins. Co.</u>, 43 Mass.
App. Ct. 317, 319 (1997) (holding that the acceleration of a
vehicle contributed to the injury when a bottle was thrown out
of the car window).  In contrast, cases that find no adequate
causal connection generally determine that a factor independent
of the auto caused the injury at issue.  See, e.g., <u>Rischitelli</u>
v. <u>Safety Ins. Co.</u>, 423 Mass. 703, 707 (1996) (holding that an
assault after a car collision did not arise from the use of the
car, but instead from the anger of assailant); <u>Sabatinelli</u> v.
<u>Travelers Ins. Co.</u>, 369 Mass. 674, 676-77 (1976) (ruling that a

gunshot victim could not collect from auto insurer just because the shooter fired a gun from inside a parked car).

In <u>American Home Assurance Co.</u> v. <u>First Specialty Insurance Corp.</u>, the court held that that the expression "arising out of," both in coverage and exclusionary clauses, "must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law." 73 Mass. App. Ct. 1, 5 (2008) (quoting <u>Bagley</u> v. <u>Monticello Ins. Co.</u>, 430 Mass. 454, 457 (1999)) (internal quotation marks omitted). In that case, an employee of the insured had been injured while loading oil at an oil terminal. <u>Id.</u> at 3. He fell from the top of the truck while having difficulty with one of the pipes. <u>Id.</u> The court observed that the employee was loading the tanker and trying to make the loading pipe work when he fell. <u>Id.</u> at 6. He "was engaged in the very activity for which the tanker truck was present," thus providing a sufficient causal connection between loading (use of the vehicle) and the resulting injury. <u>Id.</u> The court recognized the distinction between cases where there is negligence in an essential part of the loading and unloading operation, as opposed to those cases where there is a dangerous condition on the premises. <u>Id.</u> at 9.

In <u>American Home</u>, the court held that at least one of the claims (the defective pipe) was essential to the loading process. This is the crucial difference between the facts in

American Home and the present case.  In the present case, there is no claim that is based on negligence in the loading and unloading of the truck.  Rather, the Underlying Accident was caused entirely due to a dangerous condition on the premises.

In Central Mutual Insurance Co., 486 F. Supp. 2d at 182, a police officer was injured when a vehicle struck the insured telephone company's bucket truck.  The police officer was standing on the back of the truck to provide safety assistance when the insured's employees worked.  Id.  This Court held that a police officer's injury did not "arise out of" the "use" of truck, and thus was outside the scope of the commercial general liability insurance policy's auto exclusion.  Id. at 185.  In coming to this conclusion, this Court noted that there was no showing that the use of the truck at time of collision (i.e., as the base for an elevated "cherry picker," as transportation of employees, and as a platform for officer) made it more likely that the accident would occur.  Id.  Further, there was an intervening cause, namely the insured's failure to place traffic cones.  Id.

A review of the record reveals that the truck in the present case was being used for the following purposes, each of which were reasonably foreseeable by A&W:

> (a)  For carrying all the equipment required for the job onto the site; and

(b) For carrying out the actual job – i.e., cleaning and spray-painting the epoxy coating.

A&W had not yet commenced the the actual spraying of the epoxy coating when Jodrie fell into the tank, and so the Underlying Accident cannot be said to have arisen out of this use of the truck. Turning to whether the Underlying Accident arose out of carrying the equipment onto the site, it is clear that A&W's driver was backing the truck up to make the equipment more accessible for the job. Fortin Dep. 88:22-89:1. Arguably, without this use the truck would not have been on the premises and the Underlying Accident would not have occurred. On the other hand, the parties in this case do not dispute that the clarifier tank was left open and that Jodrie was unaware of the tank being open. It is also undisputed that there was a lack of sufficient safeguards and warning signs around the tank. A&W employees could not reasonably have foreseen that a ground-level tank would be left open in the exact area where they were supposed to work. Fortin testified that he had been backing up at a speed of approximately two miles per hour. Id. at 295:9-21. He further testified that the truck was not in a position where it would hit Jodrie and that Jodrie had indicated that the truck had not pushed him into the tank. Id. at 295:22-296:11.

On careful consideration of these facts, this Court is of the opinion that the use of the truck in bringing the equipment

to the site did not cause the Underlying Accident.  Rather, the
presence of the open tank (and the lack of adequate safeguards)
was an independent, intervening, and unique cause of Jodrie's
injuries.  Therefore this Court holds that the Underlying
Accident did not "arise out of the use of the truck."
Accordingly, this Court holds that the  Auto Exclusion Clause is
inapplicable.

### 2.   Interpretation of the terms "loading and unloading" and "complete operations."

While contending that the Underlying Accident "arose out of
the use of the automobile," First Mercury also argues that
Jodrie's injury was in the process of "loading and unloading"
and therefore falls within the "use and operation of a motor
vehicle."  First Mercury Mem. 9-10.  The Auto Exclusion Clause
of the First Mercury CGL Policy clearly states that "use"
includes "loading and unloading."  CGL Policy 19.  The CGL
Policy defines "loading and unloading" as meaning "the handling
of property . . . [w]hile it is being moved from an aircraft,
watercraft or 'auto', to the place where it is finally
delivered."  See id. at 27-28.  Massachusetts courts have said
in numerous cases that loading and unloading a motor vehicle is
a use or operation thereof.  See Diggins v. Theroux, 314 Mass.
735, 737 (1943); Cook v. Crowell, 273 Mass. 356, 358-59 (1930).

A&W argues that its duties involved power washing deteriorated concrete in the tanks and the spray application of an epoxy coating on the concrete with its epoxy pumping system. A&W Mem. 10.  A&W contends that because it needed to set up its equipment to perform its work, it was not "delivering" anything as was contemplated by the CGL Policy.  Id.; see also CGL Policy 90 (using the world "delivered" in its definition of "loading and unloading").  Therefore, A&W argues that the "loading and unloading" clause does not apply.  A&W Mem. 10.  In response, First Mercury argues that, under Massachusetts law, there need not be a delivery in the traditional sense for there to be "loading and unloading" under the policy.  First Mercury Opp'n 3.

In doing so, First Mercury cites to Unifirst Corp. v. Liberty Mutual Insurance Co., No. 08-4300-BLS2, 2011 WL 711007 (Mass. Super. Ct. Feb. 15, 2011) (Fabricant, J.).  In Unifirst, the plaintiff (through its subsidiary) received and delivered chlorinated solvents to its customers.  Id. at *1.  These products were delivered to the site in tanker trucks.  Id. Employees would connect a hose to a pipe located outside the building and siphon the product from the tanker truck into a storage tank within the building.  Id.  The court held that the release of a quantity of the product did occur in connection with the loading and unloading of the product to and from the

tanks, and that this activity constituted the "use" of an automobile.  Id. at *7.

While First Mercury asks the Court to interpret Unifirst to mean that "loading and unloading" can have a broader meaning without requiring physical delivery, First Mercury Opp'n 3, that is not precisely what that court held.  Rather, the court held that the release of the product occurred "in connection with the loading and unloading of the product," and therefore constituted the "use" of the automobile.  Unifirst, 2011 WL 711007 at *7.  Also, the nature of the work being performed by the plaintiff in Unifirst was the sale of the chlorinated solvent itself (i.e., an actual tangible good).  Id. at *1.  This is in contrast with the present case, where A&W has been contracted to power wash and spray epoxy coating on the deteriorated cement (i.e., A&W was contracted to provide a service, not deliver a good).

Additionally, the damage in Unifirst was caused by the release of chemicals in the process of loading and unloading of the product.  Id. at *7.  In the present case however, the Underlying Accident was caused due to the presence of an open tank on Hart's premises, which constitutes an independent intervening event that breaks the chain of causation between the use of the automobile and Jodrie's injury.  Cf. Travelers Ins. Co. v. Am. Hardware Mut. Ins. Co., 349 Mass. 768, 768 (1965) (holding that where a forklift was being operated merely to

remove material from a pile in order to load sheetrock which lay underneath, the forklift operation was merely preparatory to loading, and the "loading and unloading" clause of liability policy was inapplicable).

Additionally, First Mercury refers to the "complete operation rule" in support of its argument. First Mercury Mem. 8-9. The "complete operation rule" is used in construing "loading and unloading" clauses in automobile liability insurance policies. Travelers Ins. Co. v. Aetna Life & Cas. Co., 410 Mass. 1002, 1003 (1991). Under this rule, loading is considered complete when an employee has finished all work in which he was participating or was expected to participate. Id. at 1004. Similarly, in F. W. Woolworth Co. v. Lumbermens Mutual Casualty Co., the court stated that "[w]here the named insured trucker or his employees have become engaged and are still engaged directly in the loading or unloading process, or should be thus engaged, or are doing something reasonably connected with the process, there is reason for construing the motor vehicle coverage broadly to protect them." 355 Mass. 211, 216 (1969). In Improved Machinery, Inc. v. Merchants Mutual Insurance Co., the court explained the justifications underlying this area of law, holding that a clause of an automobile policy which extended liability coverage to include injuries sustained by persons during loading and unloading of automobile was

24

intended to extend the meaning of use of an automobile, not to restrict the coverage otherwise afforded.  349 Mass. 461, 464 (1965).

Improved Machinery, Inc. and F.W. Woolworth Co. (both dealing with the complete operation rule) may be distinguished from the present case because they deal with interpretation of the terms "loading and unloading" in the context of coverage under an automobile insurance policy viewed in its entirety. The present case concerns "loading and unloading" in the context of an Auto Exclusion Clause.  Here, the concept of "complete operation" is interpreted in the context of an exclusion clause in a commercial general liability policy, as opposed to other cases that have interpreted the term in the context of coverage under a motor vehicle policy.  In Central Mutual Insurance Co., this Court stated:

> [T]he courts of the Commonwealth have examined extensively the terms "arising out of" the "use" of an auto.  This task has generally involved determining whether an incident is covered by an auto insurance policy, rather than, as here, whether it is not covered by a general liability policy.  Because the language of the clause is often identical in the two types of policies, however, the analysis ought, as a general matter, be the same.

486 F. Supp. 2d at 184.

This Court, however, also recognized that "[t]heoretically, the terms may be construed differently in the two context[s], as a coverage provision is generally entitled

to liberal construction in favor of coverage, while an exclusion is subject to a narrow construction against the insurer." Id. at 184 n.3 (internal citations omitted).

Indeed, many courts have held that exclusions in insurance contracts ought be strictly construed, and any ambiguity ought be construed against the insurer. Hakim v. Mass. Insurers' Insolvency Fund, 424 Mass. 275, 282 (1997); Vappi & Co. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 431 (1965). In City Fuel Corp. v. National Fire Insurance Co. of Hartford, the court explained the justification for this rule, holding that, "[e]xclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured." 446 Mass. 638, 640 (2006).

Another factor relevant to this case is the "reasonable expectations" doctrine. This doctrine states that courts "must consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Peterborough Oil Co. v. Great Am. Ins. Co., 397 F. Supp. 2d 230, 236 (D. Mass. 2005) (Saylor, J.) (quoting Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000)) (internal quotation marks omitted). The "reasonable expectations" doctrine only applies, however, when insurance policy language is ambiguous, not when the plain language of an exclusion unambiguously precludes coverage. Certain Interested

<u>Underwriters at Lloyd's, London</u> v. <u>Stolberg</u>, 680 F.3d 61, 69 (1st Cir. 2012).

In purchasing a commercial general liability policy, A&W had the reasonable expectation of being insured for bodily injury caused to its employees by an occurrence during the policy period. <u>See</u> CGL Policy 17. Fortin was backing up the truck to prepare for the job. Interpreting an auto exclusion clause in the same wide manner as interpreting coverage under an automobile liability clause would defeat the purpose of insurance and the reasonable expectation of an insured. Giving the terms "loading and unloading" a meaning so broad as to include bringing equipment onsite in preparation for a job, would frustrate the very meaning of comprehensive general liablity. Such an interpretation would result in a situation where auto exclusion clauses would take effect as soon as a truck enters a worksite – defeating the very purpose of commercial general liability insurance.

This Court holds that the backing up of the truck was not a part of the process of "loading and unloading." Accordingly, the Underlying Accident did not "arise out of the use of an auto."

> **3. The Underlying Accident did not "arise out of the use of an auto" because it does not have a "necessary connection" with an "injurious condition" which is "intrinsic" and "peculiar" to the vehicle.**

Excelsior raises an alternative argument regarding the interpretation of the phrase "arising out of the use of an auto", arguing that in order for an injury to "arise out of the use of an auto," there must be a "necessary connection" between an injurious condition and the vehicle, that is "peculiar and intrinsic" to the vehicle. Intervenor Excelsior Ins. Co.'s Supplemental Mem. Case Stated ("Excelsior Case Stated Br.") 1-2, ECF No. 78. Excelsior relies upon the decision in <u>Mullen</u> v. <u>Hartford Accident & Indemnity Co.</u>, 287 Mass. 262 (1934), which involved a plaintiff who slipped and fell on oil that had negligently leaked from a truck. Excelsior Case Stated Br. 2 & n.1. The issue was whether the plaintiff's bodily injuries "ar[ose] out of the ownership, operation, maintenance, control or use" of the automobile. <u>Mullen</u>, 287 Mass. at 263. The Supreme Judicial Court held that the escape of oil was peculiar to and intrinsically related to the truck, and therefore there was a necessary connection between the injurious condition and the motor vehicle. <u>Id.</u> at 264.

Excelsior argues that falling into a pit on a worksite is not "peculiar" or "intrinsic" to a vehicle. Excelsior Case Stated Br. 5. Excelsior argues that the reasonable expectations of commercial insureds on such worksites would place injuries arising from workplace hazards within the scope of commercial

general liability, rather than auto coverage.  Id.  It suggests
that holding otherwise would result in a situation where auto
coverage is virtually always payable in all circumstances in
which injury would not have occurred "but for" the involvement
of a motor vehicle, which is clearly not the case under
Massachusetts law.  Id. (citing Specialty Nat'l Ins. Co. v.
OneBeacon Ins. Co., 486 F.3d 727, 733 (1st Cir. 2007) (holding
that "the mere involvement of a motor vehicle in a particular
misfortune does not mean that the resulting injuries are covered
by auto insurance")).

    The test for determining whether an accident arose out of
the use of an automobile has evolved over the years, and First
Mercury argues that recent Supreme Judicial Court decisions do
not require the application of this "peculiar and intrinsic"
standard.  Def. First Mercury Ins. Co.'s Case Stated Br. ("First
Mercury Case Stated Br.") 8, ECF No. 74, (citing Rischitelli,
423 Mass. at 707; Sabatinelli, 369 Mass. at 676-77).  The
Supreme Judicial Court, however, has never expressly overruled
the "peculiar and intrinsic" standard as laid down in Mullen.

    First Mercury argues that the risk of falling while guiding
and directing the backing up of a large truck is certainly
peculiar and intrinsic to trucks with attached trailers that
often require guidance to maneuver in tight spaces.  Id.  First
Mercury also claims that the presence of a premises condition

that was not peculiar or intrinsic to the truck, does not affect the link between Jodrie's injury and the nature of the truck he was guiding. Id. This Court respectfully disagrees. Any person walking backwards and unable to see where they are going faces a risk of tripping and falling – this risk is not peculiar and intrinsic to a spotter for a truck. The nature and extent of Jodrie's injuries were due to the presence of the open clarifier tank. First Mercury has failed to establish a necessary connection between the injurious condition and the vehicle, as required under the Mullen test. Under the rule laid down in Mullen, Ruggerio, and later cases, the mere involvement of the truck in an accident involving external circumstances is not sufficient to find that the Underlying Accident "arose out of the ownership, use or maintenance of the auto." Accordingly, although there is certainly a risk of falling while guiding a large truck, Jodrie's injuries in this case were not caused by merely tripping and falling but were caused due to the presence of the open clarifier tank.

This Court holds that the Underlying Accident did not "arise out of the ownership, use or maintenance of the auto" since the injurious condition was neither "peculiar" nor "intrinsic" to the auto.

> **4. The actions of a "spotter" are not sufficiently connected to the vehicle's operation to constitute "use."**

A&W argues that Jodrie's actions as a spotter are too remote from the vehicle's operation to constitute "use" under Massachusetts law. A&W Mem. 7. In the present case, Jodrie was acting as a spotter for the driver of the truck and was not seated inside or on the truck when he fell. Pl.'s Mem. 7.

There are no Massachusetts or First Circuit decisions regarding whether injuries caused to a spotter amount to injuries that arise from the use of a truck. Other courts that have addressed the issue are split. Compare Cincinnati Ins. Co. v. William F. Braun Milk Hauling, Inc., 988 F. Supp. 2d 895, 900-01 (S.D. Ill. 2013) (holding that policy's automobile liability exclusion precluded coverage for flagman's state court claims), and Earth Tech, Inc. v. U.S. Fire Ins. Co., 407 F. Supp. 2d 763, 771 (E.D. Va. 2006) (holding that a flagman providing directions to operator of tractor-trailer rig was "using" a vehicle within the meaning of the omnibus clause of the commercial automobile liability insurance policy), with Wellman-Lord Eng'rs, Inc. v. Nw. Mut. Ins. Co., 222 So. 2d 436, 438 (Fla. Dist. Ct. App. 1969) (holding that an employee in charge of unloading trucks who had directed a truck driver to drive so close to the edge of a pit that truck fell in, injuring truck driver, was not using truck within coverage of supplier's liability policy), and J. Scheer & Sons Co. v. Travelers Indem.

Co., 229 N.Y.S.2d 248, 251 (1962) (holding that the actions of an employee, in directing a concrete mixer truck with respect to clearance as truck entered building under repair, did not constitute the use of the truck as to bring contractor within the truck's liability insurance coverage).

It should be noted, however, that in both Cincinnati Insurance Co. and Earth Tech, Inc., the accident arose out of either the operation or the positioning of the vehicle. In Cincinnati Insurance Co., the driver of the truck hit the flagman while working at a clean-up site. 988 F. Supp. 2d at 896. In Earth Tech, Inc., the accident was caused due to a collision between the truck and the third-party plaintiff's car. 407 F. Supp. 2d at 765. These may be contrasted with the present case, where an independent intervening circumstance (i.e., an open ground-level tank) caused the Underlying Accident.

One factor that several courts have looked to in deciding these cases is the nature of the relationship between the spotter and the driver of the truck. Where the driver cannot see where he is going and completely trusts the spotter to direct his movements, the spotter has been considered a "user" because the actual driver is essentially an automaton, responding solely on the spotter's directions. See, e.g., Liberty Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co., 99 A.2d 815,

817 (N.J. Super Ct. App. Div. 1953) (ruling the foreman a user because the crane operator who was unloading lumber could not see where he was going and relied on the foreman to direct his movements); County of Wyoming v. Erie Lackawanna Ry. Co., 360 F. Supp. 1212, 1219-20 (W.D.N.Y. 1973) (holding that a foreman was using the machine where the operator of the machine depended on the foreman to give instructions and where foreman had rights of supervision).

On the other hand, spotters have not been considered "users" where the driver does not give up a significant degree of autonomy to the spotter. See, e.g., Belser v. Rockwood Cas. Ins. Co., 791 A.2d 1216, 1221 & nn.4-5 (making note of this rule and describing circumstances under which the rule might apply); J. Scheer, 229 N.Y.S.2d at 251 (finding that a general contractor performed "commonplace act of accommodation" by telling truck driver that he had cleared a set of sprinkler heads on the ceiling, given that the driver and a different guide retained active control over the vehicle); Nicollet Props. Inc. v. St. Paul Mercury Ins. Co., 135 N.W.2d 127, 132-33 (Minn. 1965) (ruling that a parking lot attendant waving a flashlight to indicate the entrance to a drive-in theater was not "user" of vehicle because attendant was functioning like an electric sign indicating the entrance to the theater); Goodville Mut. Cas. Co. v. Tripp, 46 Pa. D. & C. 4th 538, 546-47 (Pa. Ct. Common Pleas

2000) (holding that the guide was not a user because (1) driver could see the oncoming traffic and was merely assisted by the guide and (2) guide did not hold authority over driver's movements in the form of a superior relationship).

In the present case, Fortin testified that he showed Jodrie where the entrance was, and Jodrie was to guide him as he moved the truck into position. Fortin Dep. 85:24-86:2. Fortin said that while driving, he made sure that his pathway was clear, and proceeded to back up the truck into place. Id. at 87:15-19. Jodrie was using finger-pointing to assist him and advised him at one point that the truck was getting close to a building overhang. Id. at 91:3-6, 93:7-11. Fortin was able to see Jodrie in his rear view mirrors at all times until the Underlying Accident occurred. See id. at 87:10-94:16. There are no facts to suggest that Fortin was unable to see anything or that he was entirely dependent on Jodrie for guidance. Also, there is no evidence to suggest that the spotter, Jodrie, held any supervisory authority over Fortin.

In the absence of controlling law on this point in Massachusetts, this Court adopts the well-reasoned rationale in Goodville Mutual Casualty Co., 46 Pa. D. & C. 4th at 546-47. Since there is no clear evidence indicating that Fortin's actions were completely dependent on Jodrie's guidance, this Court rules that Jodrie's actions as a spotter are not

sufficient to constitute "arising out of the use of" the automobile.

**D. Hart is entitled to coverage as an Additional Insured under A&W's CGL Policy.**

A&W argues that First Mercury has a duty to defend and indemnify Hart on the ground that Hart is an "Additional Insured" under the CGL Policy.  A&W Mem. 17; CGL Policy 47.

A&W procured the "Additional Insured" endorsement, on which this argument is based, on September 23, 2010.  A&W Mem., Ex. 10, Certificate of Liability Insurance ("Hart Add'l Ins. Cert."), ECF No. 41-10.  First Mercury argues that the "Additional Insured" endorsement amends "Section II – Who is An Insured" of the CGL Policy and is subject to all of the CGL Policy coverage exclusions, including the Auto Exclusion Clause. First Mercury Mem. 18.  First Mercury contends that this exclusion operates to bar coverage for Hart in exactly the same manner as it does for A&W.  Id.  Considering that this Court has held that the Underlying Accident was covered by the CGL Policy and is not subject to the Auto Exclusion Clause, this argument fails.

Additionally, First Mercury argues that because of the "Separation of the Insureds" clause in the CGL Policy, Hart is not entitled to coverage.  Id.  The Separation of Insureds provision reads as follows:

> Except with respect to the Limits of Insurance, and
> any rights or duties specifically assigned in this
> Coverage Part to the first Named Insured, this
> insurance applies:
>> a. As if each Named Insured were the only Named
>>    Insured; and
>> b. Separately to each insured against whom claim is
>>    made or "suit" is brought.

CGL Policy 26.  First Mercury argues that because the Auto

Exclusion Clause excludes coverage for "bodily injury . . .

arising out of the ownership, maintenance, use or entrustment to

others of any . . . auto . . . owned and operated by . . . <u>any</u>

insured," the "Separation of Insureds" provision does not

operate to provide coverage to Hart, despite the fact that it

was A&W's "use" of the auto out of which Jodrie's injuries

occurred.  First Mercury Mem. 18.

The Supreme Judicial Court has specifically addressed this

kind of provision in the context of a motor vehicle exclusion in

<u>Worcester Mutual Insurance Co.</u> v. <u>Marnell</u>, 398 Mass. 240 (1986).

The court held that the existence of such a clause requires that

each insured be treated as having a separate insurance policy

and would thus receive coverage, despite the fact that the auto

exclusion in question by its own terms would have denied

coverage to "<u>any</u> insured."  <u>See id.</u> at 242-44; <u>Massachusetts</u>

<u>Tpk. Auth.</u> v. <u>Perini Corp.</u>, 349 Mass. 448, 457 (1965) (holding

that the naming of additional insureds does not extend the

nature of the substantive coverage originally given by the

policy, but merely gives to other persons the same protection afforded to the principal insured).

First Mercury's argument regarding the "Separation of the Insureds" clause, however, still requires at its core that the Auto Exclusion Clause bar coverage in the present circumstances. Thus, even setting aside the fact that the holding in <u>Worcester Mutual Insurance</u> directly contravenes First Mercury's point, the fact that this Court has already held that the Auto Exclusion Clause is inapplicable renders this argument moot. Accordingly, the Court holds that Hart is entitled to the same coverage as A&W.

**E.    Charter Oak does not have a duty to defend or indemnify Hart in light of the CGL Policy.**

The parties do not dispute the following: (1) that Hart has a commercial general liability policy with Charter Oak[6] and (2) that Hart is an additional insured under A&W's CGL Policy. This Court has held that Hart is entitled to the same coverage as A&W under the CGL Policy. The dispute now becomes whether First Mercury or Charter Oak provides primary coverage to Hart.[7]

---

[6] This Court notes that Hart's commercial general liability policy with Charter Oak is not included in the record before it.

[7] This Court does not consider A&W's Auto Policy with Excelsior because it has held that the First Mercury CGL Policy already provides coverage.

Section II of the CGL Policy contains an endorsement amending the definition of "who is an insured."  The amended definition reads as follows:

> A. Section II – Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury" . . . caused . . . by:
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;
> in the performance of your ongoing operations for the additional insured.
> B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:
>  . . .
> This insurance does not apply to:
>  . . .
> 2. "Bodily injury" . . . occurring after:
>     a. All work . . . to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed[.]

CGL Policy 47.  Here, Hart and A&W agreed that Hart will be an additional insured and procured the necessary paperwork.  <u>See</u> Hart Add'l Ins. Cert.  Furthermore, the bodily injury was caused by A&W's work for Hart at a location designated by Hart, and prior to the completion of the work.  Hart qualifies as an additional insured, and thus fits the definition of an insured as amended by Section II.

Despite Hart's status as an additional insured, however, another portion of the CGL Policy also bears on whether First Mercury is obligated to insure Hart in the present circumstances. Section IV(4) of the CGL Policy deals with "other insurance" (the "Other Insurance Clause") and states "[t]his insurance is excess over: . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." CGL Policy 25.

First Mercury concedes that as between it and Charter Oak, if the Court were to find that only the First Mercury policy provided coverage to Hart, First Mercury's coverage would be primary and Charter Oak's coverage would be excess. First Mercury Case Stated Br. 3. This concession appears to be consistent with the intention of the parties as evidenced in the Hart Subcontract, wherein the burden of securing the insurance is placed on the subcontractor, A&W. See Hart Subcontract art. 10. This is typical of subcontracting relationships. The party who holds additional insured status "will want the endorsed policy to respond to their losses on a primary basis, leaving their own general liability insurance limits untouched (or called upon only as excess coverage)." Wright-Ryan Constr., Inc. v. AIG Ins. Co. of Canada, 647 F.3d 411, 417 (1st Cir.

2011) (internal quotation marks omitted).  In addition, the endorsement of Hart as an additional insured under the CGL Policy states – "Hart Engineering Corp. is an Additional Insured on a Primary, non-contributory basis."  Hart Add'l Ins. Cert.

The CGL Policy also states, "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy."  CGL Policy 17.

Put simply, does the term "you" refer to only the Named Insured or does it also include the Additional Insured?  None of the parties dispute that A&W is the only Named Insured in this case.  In Wyner v. N. American Specialty Ins. Co., 78 F.3d 752 (1st Cir. 1996), the court had occasion to deal with a similar issue.  Here, a commercial general liability policy defined "you" as "the Named Insured shown in the declaration" and an endorsement modified the policy to add landlords as an "Additional Insured."  Id. at 755.  The question was whether the plain and unambiguous use of the exclusion for damage to property "you own, rent or occupy" barred landlords from asserting coverage under the CGL policy.  Id.  The court held that it did, stating that exclusions for property "you own, rent or occupy" extend to landlord as additional insured."  Id. at 756.  In this holding, the court stated that under Massachusetts law, the definition of words "you" and "your" to refer to the

Named Insured shown in the declaration (or to those qualifying under the policy as Named Insureds) did not create legal ambiguity as to the application of the policy exclusions to landlords who were named as additional insureds.  Id. at 757. The court reasoned that an ordinary and common reading of the terms "you" and "yours" in such a context would not draw a distinction between the named insured tenant and the additional insured landlords.  Id.  The court further stated that the capitalization pattern in the policy (where "Named Insured" was capitalized and "an insured," "any insured" were not) would not render it ambiguous, and would not lead reasonably intelligent persons to conclude that a usage distinction existed between the terms "Named Insured" and "additional insured."  Id.

In accordance with the decision in Wyner, this Court holds that the definition of the term "you" and "yours" as meaning the Named Insured, does not preclude the applicability of the CGL Policy to the Additional Insureds.  Id.

Thus, giving effect to the exact language of the parties, this Court holds that First Mercury is the primary insurer for Hart in the present circumstances.  Hart's commercial general liability policy with Charter Oak is thus excess over A&W's CGL Policy with First Mercury.

Charter Oak has been indemnifying Hart under a reservation of rights.  See Trial Br. Intervenor Charter Oak Fire Ins. Co.

41

20, ECF No. 75.  Considering that this Court now holds that the CGL Policy provides Hart with primary coverage with respect to the Underlying Accident, this Court also holds that Charter Oak is entitled to be indemnified by First Mercury for all costs paid by it towards the defense of Hart in this action.

> **F.  First Mercury has not violated Chapter 93A of the Massachusetts General Laws.**

A&W claims that First Mercury has violated Chapter 93A of the Massachusetts General Laws by, <u>inter alia</u>, denying coverage to A&W and exposing A&W to significant liability.  A&W Am. Compl. ¶¶ 40-46.  Chapter 93A declares unlawful any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Mass. Gen. Laws ch. 93A, § 2.  A&W argues that First Mercury's denial of coverage was unreasonable because it was undisputed that the Underlying Accident was not caused by a collision with the auto and because Jodrie was not engaged in "loading or unloading" at the time. A&W Am. Compl. ¶ 44.

In <u>Polaroid Corp.</u> v. <u>Travelers Indemnity Co.</u>, 414 Mass. 747, 753-54 (1993), the Supreme Judicial Court held that even if coverage is later declared to exist, an insurer is not liable under Mass. Gen. Laws chapter 93A if its position was reasonable, particularly where little or no legal precedent exists on the issue.  Here, one of the primary issues before

this Court was whether or not A&W was entitled to coverage under the First Mercury CGL Policy. Since there is little legal precedent on this precise issue, none of it binding and much of it conflicting - this Court holds that First Mercury's actions initially denying coverage were not unreasonable. Accordingly, First Mercury has not violated Mass. Gen. Laws chapter 93A.

## V.   CONCLUSION

For the aforementioned reasons, this Court declares that First Mercury has a duty to defend and indemnify A&W as to the claim arising out of the Underlying Accident, and to defend and indemnify Hart as an Additional Insured. Charter Oak, as excess insurer, is entitled to be indemnified by First Mercury for all amounts it spent towards the defense of Hart arising out of this action.

**SO ORDERED.**

/s/ William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE